**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DECKER ADVERTISING INC.,                                      :
                                                             :
                             Plaintiff,         :
                                                             :
     v.                                                         :
                                                             :
DELAWARE COUNTY, NEW YORK; TINA MOLÉ, in her                 :
individual and official capacity as CHAIRPERSON TO THE       :
DELAWARE COUNTY BOARD OF SUPERVISORS; ARTHUR                 :
MERRILL, in his individual and official capacity as MEMBER OF :
THE BOARD OF SUPERVISORS; MARK TUTHILL, in his              :
individual and official capacity as MEMBER OF THE BOARD OF   :
SUPERVISORS; THOMAS AXTELL, in his individual and official   :
capacity as MEMBER OF THE BOARD OF SUPERVISORS;             :
JEFFREY TAGGART, in his individual and official capacity as   :
MEMBER OF THE BOARD OF SUPERVISORS; WAYNE E.                 :
MARSHFIELD, in his individual and official capacity as MEMBER :
OF THE BOARD OF SUPERVISORS; JERRY VERNOLD, in his          :
individual and official capacity as MEMBER OF THE BOARD OF   :
SUPERVISORS; JAMES E. EISEL, in his individual and official   :
capacity as MEMBER OF THE BOARD OF SUPERVISORS;             :
GEORGE HAYNES, JR., in his individual and official capacity as :
MEMBER OF THE BOARD OF SUPERVISORS; BETTY L.                :
SCOTT, in her individual and official capacity as MEMBER OF   :
THE BOARD OF SUPERVISORS; JAMES G. ELLIS, in his individual and :
official capacity as MEMBER OF THE BOARD OF SUPERVISORS;     :
CARL PARTRICK DAVIS, in his individual and official capacity as :
MEMBER OF THE BOARD OF SUPERVISORS; ALLEN R.                :
HINKLEY, in his individual and official capacity as MEMBER OF :
THE BOARD OF SUPERVISORS; ERIC T. WILSON, in his           :
individual and official capacity as MEMBER OF THE BOARD OF   :
SUPERVISORS; JOHN S. KOSIER, in his individual and official   :
capacity as MEMBER OF THE BOARD OF SUPERVISORS;             :
WILLIAM LAYTON, in his individual and official capacity as    :
MEMBER OF THE BOARD OF SUPERVISORS; JOSEPH CETTA,           :
in his individual and official capacity as MEMBER OF THE BOARD :
OF SUPERVISORS; and AMY MERKLEN, in her individual and       :
official capacity as COUNTY ATTORNEY,                        :
                                                             :
                             Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Civil Action No.:**

**VERIFIED COMPLAINT**

**3:23-cv-1531 (AMN/ML)**

**JURY TRIAL DEMANDED**

1.      PLAINTIFF Decker Advertising Inc., by and through its attorneys, alleges as follows:

## PRELIMINARY STATEMENT

2.      This lawsuit challenges Defendants' wanton and willful retaliation against a local newspaper for its critical reporting in violation of its First Amendment rights. In response to news coverage of Delaware County that officials disliked, members of the Delaware County Board of Supervisors ("Supervisor Defendants") exercised their authority, under color of state law, to revoke Catskills-based *The Reporter*'s designation as an official county newspaper and withdraw the County's legal notice advertising. Supervisor Defendants did nothing to hide their retaliatory motive. To the contrary, County officials doubled down on their efforts to punish the newspaper's reporting by sending a letter to Kimberley and Randy Shepard, the co-owners of publisher Decker Advertising Inc., that made it unmistakably clear Supervisor Defendants had de-designated *The Reporter* because of their displeasure with the newspaper's community news coverage.

3.      Defendants' infringement of *The Reporter*'s First Amendment rights did not stop there. After *The New York Times* covered the County's de-designation of *The Reporter* in a story titled *How Local Officials Seek Revenge on Their Hometown Newspapers*, County Attorney Amy Merklen issued a gag directive prohibiting County employees from speaking to *The Reporter* about pressing matters of public concern and directing instead that all communications with *The Reporter* be funneled through the County Attorney's Office. The gag directive violates County employees' First Amendment rights to speak on matters of public concern as well as *The Reporter*'s First Amendment rights to receive newsworthy information from otherwise willing speakers.

4.      When the Delaware County Democratic Committee proposed to re-designate *The Reporter* as the third official county newspaper out of concern that the other designated

newspapers might insufficiently provide county citizens with information about their civic interests, the County Attorney claimed the proposal would violate the state statute governing county legal notices on two obviously specious grounds: first, the County claimed that it could not have more than two official newspapers, ignoring the plain language of the statute and its own precedent of designating three newspapers as official papers in 2018; and second, the County claimed that it could not change the newspaper's designation in the middle of the year, disregarding its own recent de-designation of *The Reporter* and designation of *The Hancock Herald* in its stead.

5.      This Court should declare that the Board of Supervisors Defendants violated *The Reporter*'s First Amendment rights by revoking its designation in retaliation for its protected speech and reinstate it as an official county paper immediately for a period continuing through the calendar year following this Court's order. This Court should also declare that Delaware County and Defendant Amy Merklen, by issuing the gag directive, violated both *The Reporter*'s First Amendment right to receive information from willing speakers and County employees' First Amendment right to speak on matters of public concern, and thereby enjoin the enforcement of the gag directive. Because Defendants' violation of *The Reporter*'s rights under the First Amendment was motivated by bad faith and a clear intent to retaliate, *The Reporter* seeks not only compensatory damages and injunctive relief but also punitive damages against all named County officials in their individual capacities. Finally, *The Reporter* seeks an award of attorney's fees and costs, and such other and further relief as this Court deems just and proper.

## JURISDICTION

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action asserts claims based on the First and Fourteenth Amendments to the United States Constitution (U.S. Const. Amends. I & XIV) and under 42 U.S.C. § 1983.

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343 because the claims asserted seek to redress the deprivation of rights and privileges secured by the Constitution under color of state law.

## VENUE

8.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Delaware County is in the Northern District of New York and because, on information and belief, all individual Defendants reside in this district.

9.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because all the events and omissions giving rise to this action took place in the Northern District of New York.

## PARTIES

10.     Plaintiff Decker Advertising Inc. ("*The Reporter*") is a corporation organized under the laws of the State of New York that is duly authorized to conduct business within the State of New York, with its principal place of business in Delhi, New York. Decker publishes *The Reporter*, a newspaper distributed in Delaware County and online. *The Reporter* had been publishing the County's public notices virtually since its founding in 1881 until March 2022.

11.      Defendant Delaware County is a county located in the State of New York. The Delaware County Board of Supervisors (the "Board") is the legislative body of Delaware County. The Board consists of the supervisors of the 19 towns within the County, each of whom were elected solely as town officers at town elections but serve as *ex officio* County legislators.

12.     At all times relevant to this Complaint, Defendant Tina Molé was the Chairperson of the Delaware County Board of Supervisors and the Town of Bovina Supervisor.

13.     At all times relevant to this Complaint, Defendant Arthur Merrill was the Town of Colchester Supervisor and thereafter a member of the Board.

14.     At all times relevant to this Complaint, Defendant Mark Tuthill was the Town of Delhi Supervisor and thereafter a member of the Board.

15.     At all times relevant to this Complaint, Defendant Thomas Axtell was the Town of Deposit Supervisor and thereafter a member of the Board.

16.     At all times relevant to this Complaint, Defendant Jeffrey Taggart was the Town of Franklin Supervisor and thereafter a member of the Board.

17.     At all times relevant to this Complaint, Defendant Wayne E. Marshfield was the Town of Hamden Supervisor and thereafter a member of the Board.

18.     At all times relevant to this Complaint, Defendant Jerry Vernold was the Town of Hancock Supervisor and thereafter a member of the Board.

19.     At all times relevant to this Complaint until his resignation in February 2023, Defendant James E. Eisel, Sr. was the Town of Harpersfield Supervisor and thereafter a member of the Board.

20.     At all times relevant to this Complaint, Defendant George Haynes, Jr. was the Town of Kortright Supervisor and thereafter a member of the Board.

21.     At all times relevant to this Complaint, Defendant Betty L. Scott was the Town of Masonville Supervisor and thereafter a member of the Board.

22.     At all times relevant to this Complaint, Defendant James G. Ellis was the Town of Meredith Supervisor and thereafter a member of the Board.

23.     At all times relevant to this Complaint, Defendant Carl Patrick Davis was the Town of Middletown Supervisor and thereafter a member of the Board.

24.     At all times relevant to this Complaint, Defendant Allen R. Hinkley was the Town of Roxbury Supervisor and thereafter a member of the Board.

25.     From at least January 2022 and at all times relevant to this Complaint thereafter, Defendant Eric T. Wilson was the Town of Sidney Supervisor and thereafter a member of the Board.

26.     At all times relevant to this Complaint, Defendant John S. Kosier was the Town of Stamford Supervisor and thereafter a member of the Board.

27.     At all times relevant to this Complaint, Defendant William Layton was the Town of Tompkins Supervisor and thereafter a member of the Board.

28.     At all times relevant to this Complaint, Defendant Joseph Cetta was the Town of Walton Supervisor and thereafter a member of the Board.

29.     At all times relevant to this Complaint, Defendant Amy Merklen was the Delaware County Attorney.

## FACTS

### I.     *The Reporter*'s De-Designation by the Delaware County Board of Supervisors.

30.     All of Defendants' official conduct is under color of state law.

31.     Among the authorities exercised by the Board is the power to decide which newspapers published in Delaware County will be designated as the official newspapers for publication of local laws and notices, as required by County Law § 214.

32.     For decades, the Board designated *The Reporter* each year as the official county paper pursuant to County Law § 214(2)—until the County de-designated *The Reporter* on March 23, 2022.

33.     On January 5, 2022, the County designated *The Reporter*, "an independent newspaper" pursuant to County Law § 214(2), as the official county paper for the calendar year 2022 to publish local laws and notices.

34.    On March 9, 2022, *The Reporter* published a news article titled *Delhi Justice Removed From Criminal Cases*. The article reported that Justice Gumo had been removed from his criminal court duties after a local attorney filed a complaint against him. This article is attached as **Exhibit A** to this Complaint.

35.    On March 15, 2022, the County sent a letter to *The Reporter* claiming that the article misstated the governing body that removed Justice Gumo. The County's letter is attached as **Exhibit B** to this Complaint.

36.    In addition to the request for a factual correction, the letter alleged that the newspaper's Editor "has a history of writing stories about Delaware County which are selectively researched, one-sided and ignore or minimize any facts incompatible with her intended narrative" and "often uses sensationalism and exaggeration to play on the emotions, prejudices, and fears of her readers, undermining their confidence in our County government by disparaging its actions and casting its leaders in a materially false light."

37.    The very same day, *The Reporter* ran a correction, noting that "an earlier version of this story incorrectly stated that Delhi Justice Gumo was removed from presiding over criminal cases by Delaware County's Legislative Committee. Gumo was removed from presiding over criminal cases by New York's Sixth Judicial District Administrative Judge." The updated version of the article, together with the correction, is attached as **Exhibit C** to this Complaint.

38.    The County had no further communication with *The Reporter* regarding this article.

39.    Only one week after sending the letter concerning this coverage, the County revoked *The Reporter*'s designation as an official county paper.

40.    On March 23, 2022, Defendants Tina Molé, Arthur Merrill, Mark Tuthill, Thomas Axtell, Jeffrey Taggart, Wayne E. Marshfield, Jerry Vernold, James E. Eisel, Sr., George Haynes,

Jr., Betty L. Scott, James G. Ellis, Carl Patrick Davis, Allen R. Hinkley, Eric T. Wilson, John S. Kosier, William Layton, and Joseph Cetta voted for *The Reporter*'s de-designation.[1]

41.     According to its Resolution No. 68 of 2022, the County de-designated *The Reporter* because "the cost of placing a legal notice in *The Reporter* has doubled since the beginning of 2022, along with the amount of time it takes to successfully place the notices, affecting not only that Department's budget, but also the Department's workload."

42.     The Resolution did not state any other factors or considerations justifying the de-designation. The Resolution is attached as **Exhibit D** to this Complaint.

43.     The day after the County's de-designation, on March 24, 2022, Ms. Shepard asked Defendant Tina Molé for the County's reason behind moving its notices to *The Hancock Herald*. Ms. Molé replied via email that the decision was due to "[t]he dramatic increase in price and the County having to do the work and Lillian[,]" *The Reporter*'s Editor. This correspondence is attached as **Exhibit E** to this Complaint.

## II.     The County's Purported Cost Concern.

44.     In February 2022, *The Reporter* switched over to a statewide automated system for placing legal notices with the aim of making the process more efficient and ultimately saving local governments money.

45.     During its upgrade to the automated system, *The Reporter* learned that for decades it had been undercharging for legal notice placement and corrected its rates to reflect the standard rates provided on the statewide portal.

---

[1] Dennis J. Valente, who passed away earlier this year, also voted to de-designate *The Reporter*.

46.    Those rates conform to the statutorily mandated public notice rates that have not increased in New York State since September of 1990. *See* CPLR 8007.

47.    In notifying its clients about the upgrade, *The Reporter* offered a 15-minute free training on how to place a notice on the user-friendly portal, a process that typically takes portal clients mere "minutes."[2]

48.    When de-designating *The Reporter*, the County designated *The Hancock Herald* in its place. Each of the Supervisor Defendants voted for this designation.

49.    The County again designated *The Hancock Herald* as the official county paper for the calendar year 2023 on January 4, 2023. Each of the Supervisor Defendants voted for this designation.

50.    On information and belief, the County did not contact *The Hancock Herald* to conduct due diligence prior to de-designating *The Reporter*. Indeed, Cindy Ray Argiros, the publisher of *The Hancock Herald*, stated at the County's June 28, 2023, Board meeting that she "didn't even know that [the Board] would [designate *The Hancock Herald*] or it wasn't something that I sought out, or looked for, or asked for[.]"[3]

51.    Ms. Argiros acknowledged at the Board meeting that "[*The Hancock Herald*'s] circulation is smaller than *The Reporter*'s and smaller than *The Mountain Eagle*'s."[4] Ms. Argiros also conceded that at the time of the switch, her newspaper's legal notices, unlike *The Reporter*'s, were not published online and that as of June 2023 no archive was available to non-subscribers.

---

[2]    Quick Ad Creator Portal, available at https://quickadcreator.com/public/landing (touting that an ad can be created in minutes).

[3]    A recording of the County's June 28, 2023, Board meeting is available at https://www.youtube.com/watch?v=PjXzp5sgM6A. *The Hancock Herald*'s publisher, Cindy Ray Argiros, spoke from 55:53 to 1:02:45.

[4]    *Id.*

52.     On March 22, 2023, *The Reporter* sent a Freedom of Information Law ("FOIL") request to the County to obtain, among other things, information related to the County's decision to de-designate *The Reporter*.

53.     On May 8, 2023, the County produced 90 pages of records largely consisting of communications that *The Reporter* already had and stated that the FOIL request was fulfilled. After *The Reporter* followed up to request that an additional search be conducted because, on information and belief, records had been withheld from the production, the County clarified on June 1, 2023, that the request was still pending and requested an additional 30 days to respond. After the extension elapsed, *The Reporter* appealed the constructive denial of the request on July 14, 2023. Twelve days later, the County acknowledged receipt of the appeal and improperly requested at least 30 days to respond.

54.     On October 25, 2023, counsel for the County contacted counsel for *The Reporter* to provide copies of any outstanding FOIL requests, which counsel for *The Reporter* provided on the same day along with a request to respond to the outstanding appeal within five business days and provide a complete production by November 6, 2023. The County has not responded to that request. The FOIL correspondence is attached as **Exhibit F**.

55.     As of today, the County has not provided any documents in response to this FOIL request that demonstrate any due diligence on its part prior to switching newspapers, such as surveying the costs of placing legal notices at local newspapers with any significant or even comparable readership in the County to that of *The Reporter*.

**III.    The County's March 8, 2023, Letter—Signed by 39 County Officials—Objecting to *The Reporter*'s News Coverage.**

56.     Despite losing its designation, *The Reporter* continued to provide in-depth news coverage of County government.

57.    On March 8, 2023, the County sent an unprecedented letter to the publishers of *The Reporter* demanding that *The Reporter* "make immediate changes" to its coverage of the County. This letter is attached as **Exhibit G** to this Complaint.

58.    Thirty-nine County officials signed this letter, including all Supervisor Defendants except James E. Eisel, Sr. and Betty L. Scott.

59.    At the time this letter was sent, Defendant James E. Eisel had resigned from his duties as the Town of Harpersfield Supervisor due to health concerns. Instead, his successor, Lisa Driscoll, signed the letter.

60.    In the letter, the County openly admitted that an alleged "flagrant manipulation of facts and the manner in which [the] paper reports county business was one of the reasons the Board of Supervisors opted to change the official county paper to the Hancock Herald in 2022."

61.    The County also claimed that the shift in advertising dollars from the paper should have "prompted an immediate change" in *The Reporter*'s coverage.

62.    Upon information and belief, a County official leaked the letter to another newspaper, *The Mountain Eagle*.

63.    On March 17, 2023, *The Mountain Eagle* provided front-page coverage of the letter in an article titled *County: "No Confidence" in Walton Reporter*. This article is attached as **Exhibit H** to this Complaint.

64.    Shortly after receiving the County's letter, the publishers of *The Reporter* reached out to a number of signatories of the letter to understand why they signed it and to address any concerns that County officials had.

65.    Contemporaneous conversations with these County officials demonstrated that some signatories to the letter either did not read the newspaper at all prior to the letter being sent

or had no issues with its coverage. Other signatories cited specific stories published by *The Reporter* they deemed objectionable.

66.    For example, on or around March 21, 2023, Ms. Molé and a County department head referenced a series of articles concerning the County drone program that, in their view, inaccurately suggested that there was an interdepartmental dispute regarding the program. Before the County sent the letter on March 8, 2023, *The Reporter* had published four such stories related to the County's drone program.

67.    On September 12, 2022, *The Reporter* published an article titled *Access to county-owned drone plagues EMS*.[5] The article covered a Delaware County Planning Committee meeting on September 8, 2022, where planning department head Shelly Johnson-Bennett highlighted challenges surrounding the use of the County-owned drone for emergency services. The Committee discussed potential solutions to "alleviate drone concerns," including "approving the purchase of a second drone" and "[p]roviding emergency services staff with a key to the planning department building to access the drone." This article is attached as **Exhibit I** to this Complaint.

68.    On September 27, 2022, *The Reporter* published its second article about the County-owned drone titled *County drone 'totaled.'*[6] The article briefly reported on an incident in which the County-owned drone collided with a tree and was "totaled" during a routine practice with licensed pilots from the County Probation Department. This article is attached as **Exhibit J** to this Complaint.

---

[5]    Mary A. Crisafulli, *Access to county-owned drone plagues EMS*, THE REPORTER (Sept. 12, 2022, 5:31 PM), https://www.the-reporter.net/stories/access-to-county-owned-drone-plagues-ems,88246.

[6]    Mary A. Crisafulli, *County drone 'totaled,'* THE REPORTER (Sept. 27, 2022, 11:46 AM), https://www.the-reporter.net/stories/county-drone-totaled,88564.

69.    On November 21, 2022, *The Reporter* published its third article about the drone program titled *Drone spat continues between DelCo Planning, EMS.*[7] The article covered a meeting on November 18, 2022, where Delaware County Planning Committee members discussed updates on the replacement drone purchase, including the allocation of an insurance reimbursement payment received for the totaled drone and questions regarding whether a similar drone EMS had purchased came with a LiDAR camera that the planning department could use for mapping. This article is attached as **Exhibit K** to this Complaint.

70.    On January 19, 2023, *The Reporter* published its fourth article about the drone program titled *DelCo develops drone policy.*[8] The article covered a Delaware County Planning Committee meeting concerning the development of a drone policy, including the purchase of a replacement drone and additional cameras, the collaboration between the Planning and EMS Department directors on policy creation, and the decision that "department heads are responsible for department equipment and training certification of their pilots, or that a county supervisor be appointed to provide neutral oversight." This article is attached as **Exhibit L** to this Complaint.

71.    In addition to these stories, Ms. Molé also referenced *The Reporter's* 2022 coverage of a controversial incident in the Town of Bovina, where she serves as the Town Supervisor. This Town-level matter concerned the arrest of an 11-year-old for graffiti on town property. The August 2022 story, titled *Bovina electeds direct arrest of 11-year-old*, reported on "a flood of acrimonious

---

[7]    Elizabeth DeFalco, *Drone spat continues between DelCo Planning, EMS*, THE REPORTER (Nov. 21, 2022, 4:48 PM), https://www.the-reporter.net/stories/drone-spat-continues-between-delco-planning-ems,90944.

[8]    Elizabeth DeFalco, *DelCo develops drone policy*, THE REPORTER (Jan. 19, 2023, 12:00 AM), https://www.the-reporter.net/stories/delco-develops-drone-policy,92684.

criticism from community members" concerning the arrest.[9] Ms. Molé claimed that the coverage did not include the Town's side of the story. This article is attached as **Exhibit M** to this Complaint.

72.    The same County department head who raised concerns about the drone program stories also referenced an article covering a meeting where a potential need for a County parks department was raised.[10]  The department head felt that *The Reporter* should have checked in with the department first to see if this information was ready to be reported to the public prior to publishing a story on the discussion that took place during a public meeting. *The Reporter* published an article titled *Parks Department for DelCo?* on June 15, 2022.[11]  The article stated that Delaware County Planning Director Shelly Johnson-Bennett suggested at a Planning Committee meeting that Delaware County may need a parks department due to the acquisition of over 200 vacant lots through Federal Emergency Management Agency's Flood Buyout Program. This article is attached as **Exhibit N** to this Complaint.

73.    During each conversation with County officials, the publishers of *The Reporter* noted that it has always been *The Reporter*'s practice to issue a correction if an error was made and encouraged County officials to reach out to the publishers personally if a correction is warranted in the future.

---

[9]    Jesse Hilson, *Bovina electeds direct arrest of 11-year-old*, THE REPORTER (Aug. 13, 2022, 10:09 PM), https://www.the-reporter.net/stories/bovina-electeds-direct-arrest-of-11-year-old,87599?.

[10]    Mary A. Crisafulli, *Parks Department for DelCo?*, THE REPORTER (June 15, 2022, 12:00 AM), https://www.the-reporter.net/stories/parks-department-for-delco,86144?.

[11]    Emily Flitter, *How Local Officials Seek Revenge on Their Hometown Newspapers*, THE REPORTER  (June 18, 2023), https://www.nytimes.com/2023/06/18/business/newspapers-public-notices.html#:~:text=Sometimes%2C%20though%2C%20public%20officials%20revoke,part%20of%20the%20popular%20lexicon.

IV.    **The County's Gag Directive.**

74.    Three months later, *The New York Times* covered the County's de-designation of *The Reporter* in a story titled *How Local Officials Seek Revenge on Their Hometown Newspaper*. *The New York Times* article reported that "some county officials said they disagreed with the decision" to de-designate. This article is attached as **Exhibit O** to this Complaint.

75.    The article quoted Mr. Wayne Marshfield, who "signed the letter, but said he had done so only to support his colleagues." Marshfield told *The New York Times*, "[t]hey claim that The Reporter would publish biased articles. I always found it to be quite factual, but they claim not, and I guess they claim that The Reporter wouldn't publish corrections, even though I believe they would."

76.    Only five days after *The New York Times* published its story, the County Attorney's Office issued a directive to County employees requiring that all requests for comment from *The Reporter* be referred to the County Attorney's Office.

77.    The County issued the directive shortly after *The Reporter*'s Editor contacted County Public Defender Joseph Ermeti on June 22, 2023, to confirm "who authorizes, creates and does the posting on the Delaware County Public Defender Facebook account," a matter of public concern.

78.    Mr. Ermeti responded one day later that he had "been directed to refer all inquiries in this matter and any other matter that pertains to the Public Defender's office to the County Attorney's office."

79.    Defendant County Attorney Amy Merklen, in response to follow-up from *The Reporter*'s editor, clarified that "[s]ince the Reporter is represented by counsel and is contemplating litigation against the County, any and all communication should go through your

attorney. As you know, my office represents the County and as such, the Reporter's attorney can reach out to me." This correspondence regarding a request for comment and the County's gag directive is attached as **Exhibit P** to this Complaint.

80.    In a June 28, 2023, telephone call with Ms. Merklen, counsel for *The Reporter* requested that this overbroad directive be rescinded because it violates both the First Amendment rights of County employees to speak on matters of public concern and *The Reporter*'s First Amendment right to receive information from otherwise willing speakers.

81.    Counsel for *The Reporter* emailed Ms. Merklen on July 5, 2023, to schedule a follow-up conversation regarding the gag directive. Ms. Merklen did not respond to this email.

82.    Mr. Ermeti subsequently responded to *The Reporter*'s Editor regarding another request for comment, but only after he told *The Reporter* that he was going to run *The Reporter*'s request for comment by Ms. Molé.

83.    It remains unclear how many employees were directed not to speak to *The Reporter*'s journalists and whether this directive continues to be enforced. The County has not responded to *The Reporter*'s most recent demand, dated August 22, 2023, again requesting that the directive be rescinded.

**V.    The Democratic Committee's Proposal and the June 28, 2023, Board Meeting.**

84.    On June 23, 2023, shortly after *The New York Times* reported on the de-designation of *The Reporter*, the Delaware County Democratic Committee prepared a proposed resolution to designate *The Reporter* as an additional official newspaper of the County. This resolution is attached as **Exhibit Q** to this Complaint.

85.    The Democratic Committee proposed in the resolution to designate *The Reporter* in part because "Delaware County has only two remaining local newspapers with county-wide

reach: The Reporter, read mostly in the western side of the Delaware County, and The Mountain Eagle that is read mostly on the eastern side of the county" and "the [Delaware County Republican Committee's] choice of the Hancock Herald, which covers only the town of Hancock, leaves a large sweep of the county drastically underserved."[12]

86.    The resolution also indicated that "the [Democratic Committee] has consulted County Law §214 and understands that designating more than one newspaper of record is allowed."[13]

87.    On information and belief, Ms. Merklen told Democratic Committee chair Kathleen Hayek that the proposed resolution did not comply with County Law § 214 in part because the Democratic Party cannot designate more than one newspaper in a calendar year.

88.    But County Law § 214 explicitly permits the designation of "at least two newspapers" for the publication of local law and notices, including "independent newspaper[s] not advocating the principles of any political party" like *The Reporter*. And the Delaware County Republican Party did just that in 2018 by designating both *The Reporter* and *The Mountain Eagle* as the official Republican newspaper in its Resolution No. 2 of 2018.  The Resolution is attached as **Exhibit R** to this complaint.

89.    On June 28, 2023, the County Board of Supervisors briefly mentioned the Democratic Committee's proposed resolution in a meeting. However, instead of delving into the merits of the proposed resolution, the Board gave privilege of the floor to *The Hancock Herald*'s

---

[12]  Delaware County Democratic Committee, *DCDC Supports The Reporter* (June 23, 2023), https://dcnydems.org/dcdc-supports-the-reporter/.

[13]  *Id.*

publisher, Ms. Argiros, to speak at length in apparent response to the content of the proposed resolution.[14]

90.    After Ms. Argiros's speech, Wayland Gladstone, the Town of Andes Supervisor, noted that the resolution to designate *The Reporter* needed to go through the proper process, and Board chair Ms. Molé confirmed that the resolution had been forwarded to the legislative committee.[15]

91.    The proposed resolution was then discussed two months later during a Legislative Committee Special Meeting on August 23, 2023. No formal vote was taken.

92.    During this meeting, Democratic Committee chair Ms. Hayek expressed concern that placing public notices with *The Hancock Herald* is "not serving the people" because the paper is not widely read by citizens of Delaware County.[16]

93.    Ms. Hayek requested that *The Reporter* be designated as an additional official county paper. She also requested the proposed resolution be placed on the Board's agenda for discussion and a vote.

94.    Ms. Molé responded that both the County Democratic and Republican committees "have the opportunity in the fall to recommend to the board a new paper if the Democrat[ic] Committee wishes."

---

[14] A recording of the County's June 28, 2023 Board meeting is available at https://www.youtube.com/watch?v=PjXzp5sgM6A. *The Hancock Herald*'s publisher, Cindy Ray Argiros, spoke from 55:53 to 1:02:45. The meeting minutes can be accessed at https://www.delcony.us/wp-content/uploads/2023/07/2023-06-28-Board-Meeting-Minutes.pdf.
[15] *See id.* at 1:02:54 to 1:03:45 for Mr. Gladstone's remarks, with Ms. Molé responding at 1:03:29 that "[the resolution] will go through the process to legislative; it has been forwarded."
[16] The meeting minutes can be accessed at https://www.delcony.us/wp-content/uploads/2023/09/Legislative-2023-08-23-Special-Meeting.pdf.

95.     The fall timing for recommending an official paper contradicts the County's own conduct in March 2022, when it switched county newspapers in the middle of the year by de-designating *The Reporter*.

96.     On October 11, 2023, the Democratic Committee informed the Board that it had voted to recommend *The Reporter* as its newspaper of record for 2024. As of the time of the Complaint's filing, the Board had not responded to this recommendation. This correspondence is attached as **Exhibit S**.

**VI.     *The Reporter*'s Demand Letter.**

97.     On August 22, 2023, *The Reporter* sent a demand letter to the County requesting immediate reinstatement and compensation for the lost revenue resulting from its unlawful de-designation. This letter is attached as **Exhibit T** to this Complaint.

98.     In the demand letter, *The Reporter* told the County that both the de-designation and the gag directive violated its First Amendment rights. *The Reporter* notified the County that it intended to file suit in federal court if the matter was not satisfactorily resolved within 30 days.

99.     Almost two months later, counsel for the County sent a letter dated Oct. 12, 2023, rejecting the demands set out in *The Reporter*'s letter and arguing instead that First Amendment precedent and County Law § 214 support the County's de-designation of *The Reporter*. This letter is attached as **Exhibit U** to this Complaint.

100.     Due to the arbitrary and retaliatory decision by Delaware County and Supervisor Defendants to revoke *The Reporter*'s designation and instead publish legal notices in another newspaper, *The Reporter* estimates that it has lost over $12,000 in revenue to date. *The Reporter* will continue to suffer harm as long as it is not reinstated as an official county paper and while

Delaware County and Defendant Amy Merklen continue to unlawfully restrict its rights to receive information from willing speakers on matters of public concern.

101.    Defendants' rejection of *The Reporter*'s request for reinstatement, recission of the gag directive, and damages leaves *The Reporter* with no choice but to file suit to vindicate its First Amendment rights.

## CLAIMS FOR RELIEF

## COUNT ONE

**Violation of *The Reporter*'s First Amendment Rights Under 42 U.S.C. § 1983
by De-Designating It in Retaliation for Its Protected Speech
(against Delaware County and Supervisor Defendants)**

102.    Plaintiff incorporates by reference all the foregoing allegations.

103.    Delaware County and all Supervisor Defendants are "persons" for purposes of 42 U.S.C. § 1983.

104.    The acts of Delaware County and all Supervisor Defendants complained of herein have been taken under color of state law.

105.    Delaware County and Supervisor Defendants have deprived Plaintiff of its rights under the First Amendment to the Constitution of the United States by revoking its designation as an official county paper in retaliation for its protected speech.

106.    Delaware County's and Supervisor Defendants' conduct violates 42 U.S.C. § 1983.

107.    Delaware County's and Supervisor Defendants' retaliatory acts have been intentional, malicious, willful and wanton. The motivating factor in their acts has been to retaliate against Plaintiff for its exercise of protected free speech rights.

## COUNT TWO

**Violation of *The Reporter*'s First Amendment and Fourteenth Amendment Rights Under 42 U.S.C. § 1983 by Depriving It of the Opportunity to Receive Information from Willing Speakers (against Delaware County and Defendant Amy Merklen)**

108.   Plaintiff incorporates by reference all the foregoing allegations.

109.   The First Amendment protects the right of members of the press, including Plaintiff, to gather news and receive information from willing speakers, including public employees and contractors. Such information may inform debate, strengthen the public's oversight of its government, and promote further First Amendment-protected speech.

110.   The First and Fourteenth Amendments also guarantee members of the press, including Plaintiff, the right of equal access to news sources on equal terms and conditions, without disfavored treatment or exclusion by the government. Governmental entities, like the County, run afoul of the First and Fourteenth Amendments where, as here, access to public employees and contractors is discriminatorily granted only to select media outlets.

111.   The First Amendment likewise protects public employees' right to speak in their capacity as private citizens on matters of public concern. The gag directive is impermissibly broad, restricting all unauthorized communications between County employees and Plaintiff's employees, even when they are speaking as private citizens on matters of public concern.

112.   The gag directive bars otherwise willing speakers from communicating information of public concern to Plaintiff, but not to its peer media outlets, and thus impermissibly abridges Plaintiff's First and Fourteenth Amendment rights, to the detriment of an informed public.

113.   By issuing a gag directive that prohibits County employees from communicating with Plaintiff's employees and directs all communications to the County Attorney's Office, Defendants Delaware County and Amy Merklen have violated the First and Fourteenth Amendment rights of the public and the press by impermissibly limiting the press's opportunity to

receive information that County employees otherwise choose to share and exclusively targeting their directive at Plaintiff's employees in a manner inconsistent with the level of access granted to Plaintiff's peer media outlets.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that this Court:

A. Issue an injunction ordering Delaware County to reinstate *The Reporter* as an official county newspaper immediately for a period continuing through the calendar year following this Court's order and ordering the County and its Supervisors to award future designations to newspapers only upon articulable and coverage content-neutral criteria;

B. Award *The Reporter* compensatory damages for the revenue it lost as a result of the de-designation in an amount to be proven at trial;

C. Award *The Reporter* exemplary or punitive damages against the Supervisor Defendants and Amy Merklen, in an amount to be proven at trial;

D. Preliminarily and permanently enjoin the Defendants from further unlawful violation of *The Reporter*'s First and Fourteenth Amendment rights, and in particular, that they be ordered immediately to rescind the gag directive that prevents County employees from speaking with employees of *The Reporter*;

E. Declare that Delaware County and the Supervisor Defendants violated *The Reporter*'s First Amendment rights by de-designating it as an official county paper in retaliation for its protected speech;

F.  Declare that Delaware County and Defendant Merklen violated *The Reporter*'s First Amendment rights to receive information from willing speakers by issuing the gag directive;

G.  Declare that Delaware County and Defendant Merklen violated the County employees' First Amendment rights to speak on matters of public concerns by issuing the gag directive;

H.  Award *The Reporter* its reasonable attorney's fees and costs; and

I.  Grant *The Reporter* any other relief that the Court deems just and proper.

Dated: December 4, 2023

Respectfully submitted,

By: _____

Heather E. Murray (704700)
Mark H. Jackson (*pro hac vice* forthcoming)
CORNELL LAW SCHOOL
FIRST AMENDMENT CLINIC[17]
Myron Taylor Hall
Ithaca, NY 14853
Tel.: (607) 255-8518
Email: hem58@cornell.edu
        mhj35@cornell.edu

Michael J. Grygiel (2291821)
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, NY 12207
Tel.: (518) 689-1400
Email: grygielm@gtlaw.com

*Counsel for Plaintiff Decker Advertising Inc.*

---

[17]  Local Journalism Project interns Matthew Hornung and Yifei Yang drafted portions of this Complaint. The Project is affiliated with the Cornell Law School First Amendment Clinic and housed within Cornell Law School and Cornell University. Nothing in this Complaint should be construed to represent the views of these institutions, if any.

**Verification**

STATE OF NEW YORK      )
                            ) ss.:
 COUNTY OF DELAWARE)

I, RANDY SHEPARD, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am

the Publisher of *The Reporter* and have authorized the filing of this Verified Complaint. I have

reviewed the allegations made in the Complaint. Based on my personal knowledge and on

information obtained in the ordinary course of business from records and from individuals with

knowledge, the information contained herein is true to the best of my knowledge.

_____
Randy Shepard

Sworn to me this 4th day of
December, 2023

Notary Public

KRYSTYN LAROCHELLE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01LA6440634
Qualified in Delaware County
Commission Expires September 12, 2026